GLORIA GRENING WOLK, MSW
Plaintiff Pro Se
4885B Capital Blvd. #168
Raleigh, NC 27604
Ph (919)875-8627 Fax 815-572-9707
ggwolk@Viatical-Expert.net

U.S. DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA GRENING WOLK,<br><br>    Plaintiff,<br><br>vs.<br><br>PHILIP R. GREEN,<br><br>    Defendant | Case No.: No. 06-cv-0525-BZ<br><br>**PLAINTIFF'S SUPPLEMENT TO OPPOSITION TO RENEWED MOTION TO DISMISS**<br><br>Date:  September 5, 2004<br>Time:  10:00 a.m.<br>Crtm:  G<br>Honorable Bernard Zimmerman |

### I. INTRODUCTION

This case is about an attorney who made a false promise and misrepresented his expertise in order to induce a client to retain him; continually refused to file the substitute attorney form; extorted additional fees under the threat of abandonment; perjured himself before a tribunal; failed to perform any useful acts on the Plaintiff's behalf; and betrayed her after the dismissal of the underlying lawsuit was filed—by forcing her to comply with previously undisclosed settlement terms.

## II. PROCEDURAL HISTORY

There are two errors in this section of Defendant's Renewed Motion to Dismiss. The first error is subtle: the implication that the Complaint was not timely served. That is untrue.

The second not only is untrue but an outrageous misrepresentation. Defendant claims that Plaintiff's surreply in opposition to their first Motion to Dismiss "makes a judicial admission that her action was filed two days outside the statutory period." Plaintiff made no such admission. The actual words are: "If it is deemed that the statute of limitations ended on August 19, although the Complaint was filed on August 21 these two days did not prejudice the Defendant in any way." [Plaintiff's Surreply, P. 3 lines 22-25]

These are typical of Defendant's frequent mischaracterization of facts.

## III. SUMMARY OF ARGUMENT

Plaintiff incorporates by reference her Opposition and the Surreply to the first Motion to Dismiss, with the attached exhibits. This reliance is appropriate because the amended complaints did not change the material factual allegations against Defendant *and* because arguments and factual assertions in the renewed motion are nearly word-for-word identical to the first motion to dismiss.

This Supplement will provide new details to support the timely filing of the Complaint, the amount in controversy, and the fraud causes of action.

/ / /

## IV. STATEMENT OF FACTS

### A. Statute of Limitations

"An attorney's representation of a client ordinarily ends when the client discharges the attorney or consents to a withdrawal, the court consents to the attorney's withdrawal, or **upon completion of the tasks for which the client retained the attorney.**" [Citations]" *Gonzalez v. Kalu*, 140 Cal.App.4th 21; 43 Cal.Rptr. 3d 866 (2006) [italics added).

Dismissal of the underlying lawsuit was filed on August 19, 2005, although the terms of settlement were not yet concluded. Earlier that day Defendant sent a draft of the settlement agreement to Plaintiff and she faxed back the signature page. Unknown to Wolk, this was not the official agreement, the one prepared by the opposition attorney. The August 19 settlement agreement, she later learned, was prepared by Defendant on his computer and was a Word™ document. In September, when she received the official agreement and compared it with the one Defendant sent her in August she found that the Word™ document drafted by Defendant was slightly different. The official agreement contained the words "attachment" and "Exhibit A" and included an attachment.

On August 18, 2005, the day prior to the filing of the dismissal, Defendant sent Plaintiff two URLs that the opposition attorney wanted her to remove from her Web site. That was what she agreed to, and she sent back the signature page. Two days later, on August 21, Defendant sent Plaintiff a revision. His email contained a long list of URLs (Web site page locators) which he claimed to have just received from the opposition attorney. This list changed the settlement agreement and caused great distress to the

Plaintiff. When she protested, Defendant warned that if she refused to comply with the new list of URLs she could be sued for breach of contract. She had, after all, returned the signature page to Defendant.

"So long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative," and, of particular significance to the instant case "the attorney negotiated with opposing counsel . . . . That contact with opposing counsel amounted to representation." *Gurkewitz v. Haberman,* 137 Cal.App.3d 328 (1982).

On September 6, 2005 the Plaintiff asked the Defendant to send the Agreement that had signatures of both parties. Since she had not previously received this, she was astonished when, on September 9, she saw the formal Agreement.

The formal agreement was a locked Adobe™ file prepared by the opposition attorney. The text included the words "attachment" and "Exhibit A." The attachment was a long list of URLs. Either the agreement changed between August 19 and a later date (unknown to the Plaintiff), or the Defendant intentionally withheld the actual document for reasons one can only surmise.

Defendant's last billing statement shows that the law office of Green & Green billed for services through September 9, 2005. He obviously considered September 9 as the date their relationship terminated—the date when he sent, as email attachment, the official, signed Settlement Agreement.

The acts between August 19 and September 9 were not simply "ministerial" nor were they "inconclusive communications." These acts were critical to the future earning ability of the Plaintiff.

### B.    <u>Amount in Controversy</u>

The following information was provided to Defendant as part of the Initial Disclosures required by Rule 26(a):

Damages are both direct and proximate. Directs costs include sums paid to Defendant; expenses for transportation between Orange County and Los Angeles (i.e., hiring a car and driver); expenses for transportation between Orange County and San Francisco (excessive due to scheduling on short notice, the necessity to arrive by a certain time and to make the round trip in one day); legal fees paid to the elder fraud attorney who was consulted when Plaintiff was extremely distraught; the expert witness fee; and a multitude of lesser expenses. Plaintiff would not have incurred these expenses if she accepted the 2004 settlement, or negotiated one-on-one with the opposition attorney to revive that agreement, as he proposed at the August 2005 settlement conference.

Far more substantial are the proximate damages. The validity of proximate damages is determined by asking: Would the result be the same if the attorney did not perform in the manner alleged? *Mitchell v. Gonzales,* 54 Cal.3d 1041, 1 Cal.Rptr.2d 913; 819, P.2d 872 (1991). Defendant Green's deceit and fraudulent acts were substantial factors in the causation of these damages.

Total economic damages are in excess of $200 thousand. This calculation includes lost profits and earnings, which were foreseeable in that protecting her future earning ability was the reason the Plaintiff wanted to go to trial. "Where a special relationship exists between the parties, a plaintiff may recover for loss of expected

economic advantage through the negligent performance of a contract. . ." *J'Aire v. Gregory,* 24 Cal.3d 799, 804 (1979).

The calculation also includes the necessity and expense to the Plaintiff of refinancing her mortgage in order to have funds for living expenses and relocation; surcharges to refinance due to the effect on her credit rating of various acts of Defendant; the sale of her home under duress and the consequential loss of nearly all equity; and the expense of relocation.

Defendant wrongly cites *Smith v. Superior Court*, 10 Cal. App. 4th 1033; 13 Cal. Rptr. 2d 133 (1992) to argue about damage that is solely economic. This case is inapplicable in part because Smith had one cause of action, negligence, and the *Smith* court found that "recovery may not be had for emotional distress attributable to the legal malpractice alleged *in this case.*" (italics added) The basis for emotional distress within a legal malpractice lawsuit, the Court stated is "reasonably foreseeable" emotional injury "separate and apart from that which every family law litigant suffers."

There are numerous differences between *Smith* and the instant case, not the least being fiduciary fraud. The *Fragale* court addressed damages for fiduciary fraud: "We conclude that damages are not limited to out-of-pocket losses. The result is consonant with the principle that 'the faithless fiduciary shall make good the full amount of the loss of which his breach of faith is a cause**.**'" (citations) *Fragale v. Faulkner*, 110 Cal. App. 4th 229; 1 Cal. Rptr. 3d 616(2003).

The fact that the Plaintiff was sixty-seven years of age at the time she was victimized by the Defendant qualifies her for treble damages per the elder fraud abuse statute.

### C. <u>Fraud</u>

Philip Green committed intentional fraud repeatedly, first to induce the Plaintiff to send him a retainer of $10 thousand, then to enter into the contract, then to keep her as a paying client. "A fraud claim against an attorney is not necessarily a malpractice claim." *Mosier v. Southern California Physicians Insur. Exch.*, 63 Cal. App.4th 1022; 74 Cal.Rptr.2d 550 (1998).

A cause of action for a false promise should plead facts to show the existence of two specific intentions of the promisor: an intention to cause the promisee to act by reason of the promise, and an intention at the time of the promise not to keep it. *Hill Trans. Co. v. Southwest Forest Industries, Inc.*, 266 Cal.App.2d 702 708 (1966); *Regus v. Schartoff,* 156 Cal.App.2d 382,389 (1957). Given this requirement, an action based on a false promise is simply a type of intentional misrepresentation, i.e., actual fraud. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 159 (1991).

Defendant engaged in several different kinds of fraud. *See generally*, Cal. Civil Code §1710. Making a promise or giving an assurance without any intention of performing is fraud. *See*, e.g., *Union Flower Market v. Southern California Flower Market*, 10 Cal.2d 671, 76 P.2d 503 (1938). Intentionally making false statements with the intent to induce others to act or to refrain from acting is fraud. *See*, e.g., *Lacher v. Superior Court,* 230 Cal.App.3d 1038, 281 Cal.Rptr. 640 (1991). Speaking half truths while deliberately concealing relevant facts is fraud. *See* e.g., *Bank of America v. Greenbach*, 98 Cal.App.2d 220, 234, 219 P.2d 818 (1950).

Philip R. Green's **first** act of fraud was on May 2, 2005, when he agreed to take the case to trial, and did not disclose that he would be out of the country at the time of

trial. Although the Motion to Dismiss continues to deny the failure to disclose (P.10-11 Lines 26-27 and 1-2; P. 17 Lines 7-8) Defendant admitted in his response to #4 of the First Set of Interrogatories that he did not disclose this on May 2 but, in his words, "Shortly thereafter . . . "

He disclosed this conflict *after* cashing the $10 thousand retainer—then refused to return the money. "An intentional failure to disclose is an actionable fraud in the presence of a fiduciary duty to disclose." *Jackson v. Wells,* 210 Cal.App.3d 336; 258 Cal.Rptr. 454 (1989).

His **second** act of fraud was misrepresenting his experience. Defendant claimed he had twice won verdicts for his clients. Plaintiff later learned that Defendant had no trial experience.

His **third** act of fraud was deceiving the Plaintiff into believing he would immediately file a motion to continue the trial date and would argue for sufficient time to file a motion for summary judgment. Related to these acts, was Defendant's failure to make any effort to get an expedited hearing. As a result, the motion was not heard until slightly more than one month before the trial date.

His **fourth** third act of fraud was misrepresenting the purpose of the continuation of trial date—claiming it would benefit the Plaintiff. Instead, the continuation was for the sole benefit of the Defendant. He was satisfied when the Court granted an additional two weeks—just long enough for the Defendant's planned vacation. Further proof that Defendant misrepresented the continuation of trial date as a benefit for the Plaintiff is his failure to request a continuation of discovery cutoff.

His **fifth** act was a deceit on the Court, which is a violation of Rule 5-200(A) and (B) of the California Bar Association's Rules of Professional Conduct. Defendant falsely asserted at the continuance hearing that his first contact with Wolk was on May 10. He admitted the truth in his responses to discovery: that the first contact was May 2, 2005 and, separately, that he falsely declared to the Court that their first contact was May 10.[1] (May 10 was important to shore up the falsehood to the Court that he diligently filed the motion within 15 days of the first contact.)

His **sixth** act of fraud was the promise to Plaintiff that if the trial date was continued he would file the substitute attorney form. Instead, he continued to extort money from the Plaintiff under threat of (a) cancelling the one deposition he scheduled and (b) completely abandoning her on the eve of trial.

His **seventh** act of fraud was his sworn statement to the Court that if the trial date was continued, he would file the substitute attorney form (which he attached as an exhibit to his motion). Although the Court immediately granted an additional two weeks, Defendant did not to file the form that day, and chose not to file it day after day, week after week.

His **eighth** act of fraud was failing to perform as promised. "Failure to perform can, when coupled with other circumstantial evidence, support an inference of fraudulent intent." *Baxter v. Peterson*, Cal.App.4th (May 8, 2007).

His **ninth** act of fraud was the scheduling of no more than one deposition (he had claimed the need to take at least two additional depositions in his motion to continue trial date).

---

[1] Responses to Requests for Admission #3 and 13.

His **tenth** act of fraud was scheduling that single deposition for the last day of discovery.

His **eleventh** act of fraud was filing a motion to compel after discovery cut-off, which was denied as untimely. Had he scheduled the deposition one week earlier, the motion to compel could have been timely. Then, we would have had evidence to prove the underlying lawsuit was completely without merit.

His **twelfth** act of fraud was sending the Plaintiff the wrong settlement agreement on August 19, 2005. Either he withheld the actual settlement agreement or it was changed after August 19.

Defendant's **thirteenth** act of fraud or deceit is the claim that he is responsible for a "walk away" settlement. There are two defects with this claim: (1) It fails the "'but for' test of causation [which] applies to a claim of legal malpractice in the settlement of litigation [citations]." *Viner v. Sweet,* 30 Cal.4th 1232 (2003) and (2) It ignores the settlement negotiated in 2004 by other attorneys, a settlement that similarly was a "walk away" but did not include the onerous terms of the 2005 settlement, terms that will affect the Plaintiff's prospective economic advantage far into the future.

## CONCLUSION

For the reasons stated above and those elaborated in the Plaintiff's Opposition and Surreply, the Court should deny the Defendant's Motion to Dismiss/Motion to Strike.

RESPECTFULLY SUBMITTED this 25 day of July, 2007.

                                                     /s/ Gloria Grening Wolk
                                                   Gloria Grening Wolk, Pro Se

I hereby certify that on July 25, 2007, I electronically filed

PLAINTIFF'S DECLARATION IN OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE; PLAINTIFF'S DECLARATION IN SUPPORT OF THIS OPPOSITION AND EXHIBITS ATTACHED THERETO with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Timothy J. Halloran

thallaron@mpbf.com

Summer M. Smith

ssmith@mpbf.com

MURPHY, PEARSON, BRADLEY & FEENEY

88 Kearny Street, 10th Flr.

San Francisco, CA 94108-5530

Attorneys for Philip R. Green

/s/ Gloria Grening Wolk